[978 NE2d 1241, 954 NYS2d 772]

In the Matter of MICHAEL D'ANGELO, Respondent, v NICHOLAS SCOPPETTA, as Commissioner of the Fire Department of the City of New York, et al., Appellants.

Argued September 7, 2012; decided October 18, 2012

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Ellen Ravitch, Georgia Pestana* and *Pamela Seider Dolgow* of counsel), for appellants. The order of the Appellate Division should be reversed because the CPLR article 78 petition failed to state a cause of action to compel removal of the letter and the Advisory Memorandum from petitioner's Equal Employment Opportunity file. Petitioner failed to establish that the letter and the Advisory Memorandum constitutes "discipline," that he was denied due process, or that respondents' decision was arbitrary or capricious. (*Holt v Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625; *Matter of Cohn v Board of Educ. of the City School Dist. of the City of N.Y.*, 74 AD3d 457, 17 NY3d 729; *Matter of Hoffman v Village of Sidney*, 235 AD2d 698; *Matter of Von Essen v New York City Civ. Serv. Commn.*, 4 NY3d 220; *Matter of O'Connor v Sobol*, 173 AD2d 74, 80 NY2d 897; *Tomaka v Evans-Brant Cent. School Dist.*, 107 AD2d 1078, 65 NY2d 1048; *Matter of Alpert v Grecco*, 73 AD2d 710; *Matter of Cassone v Westchester County Health Care Corp.*, 5 AD3d 764, 3 NY3d 604; *Matter of Memminger v Westbury Union Free School Dist.*, 80 AD2d 918, 55 NY2d 867; *TeBordo v Cold Spring Harbor Cent. School Dist.*, 126 AD2d 542, 70 NY2d 605.)

*Sullivan Papain Block McGrath & Cannavo, P.C.*, New York City (*Michael N. Block* and *Stephen C. Glasser* of counsel), for respondent. The Appellate Division correctly affirmed the Supreme Court's finding that the fire department's "formal notice of disposition" placed in petitioner's file 2½ years after a complaint was filed against him was the equivalent of a disciplinary reprimand rather than a *Holt* "critical evaluation," thus triggering the procedural due process safeguards of Civil Service Law § 75, where it (i) *"substantiated"* allegations that petitioner "exercised unprofessional conduct" and made "inappropriate and offensive comments of a racial nature in the workplace to another fire department employee" which conduct "violates the fire department's Equal Employment Opportunity (EEO) policy and code of conduct"; (ii) made a formal finding of misconduct in that it resulted from the fire department's EEO office having "conduct[ed] a thorough investigation," including "interviewing witnesses and reviewing relevant facts presented in the complaint," all without affording any protection under Civil Service Law § 75; (iii) was issued only after a separate memorandum of these findings was *"reviewed and approved"* by an "impartial" administrator, the fire commissioner himself; and (iv) had both immediate consequences of ordering petitioner to take "additional EEO training," as well as long-term consequences since these findings could be used against petitioner when he seeks promotion under the "1 in 3 rule" of Civil Service Law § 61. (*Holt v Board of Educ. of Webutuck Cent. School Dist.*, 52 NY2d 625; *Matter of Civil Serv. Empls. Assn. v Southold Union Free School Dist.*, 204 AD2d 445; *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509; *Thompson v Grumman Aerospace Corp.*, 78 NY2d 553; *Matter of Exley v Village of Endicott*, 51 NY2d 426; *Walls v Turner Constr. Co.*, 4 NY3d 861; *Burns Elec. Co. v Walton St. Assoc.*, 136 AD2d 291, 73 NY2d 738; *Matter of Franks v DiNapoli*, 53 AD3d 897; *Matter of Rednow Realty Corp. v Tully*, 72 AD2d 621, 48 NY2d 610; *Matter of Gomez v Hernandez*, 50 AD3d 404.)

### OPINION OF THE COURT

Ciparick, J.

In this appeal, we consider whether a written letter from the Assistant Commissioner of the Fire Department of the City of New York (the Department) to petitioner firefighter advising him that he violated the Department's Code of Conduct and Equal Employment Opportunity (EEO) Policy may be made

part of petitioner's permanent EEO file without affording him an opportunity for a hearing pursuant to section 15-113 of the Administrative Code of the City of New York. We conclude that petitioner is entitled to a hearing before the Department may place such letter in his permanent file.

Petitioner has been employed as a firefighter with the Department since 2003. On January 22, 2006, petitioner and Russell Harris, an emergency medical technician with the Department, separately responded to the scene of a motor vehicle accident in Brooklyn. There, Harris alleges that petitioner assaulted him and yelled a racial epithet at him. In response, Harris filed a police report and notified a supervisor. A lieutenant at Harris' station prepared an Unusual Occurrence Report (UOR) describing the purported incident and identifying potential witnesses. Based upon this UOR, the Department's Bureau of Investigations and Trials (BIT) initiated an internal investigation.*

Three days later, Harris lodged a complaint with the Department's EEO office and a two-year investigation ensued. During this time, the EEO office notified petitioner of the complaint and interviewed him. The EEO office also questioned other personnel present at the time of the alleged incident, including individuals named by petitioner. At the conclusion of the investigation, the EEO office found that the evidence substantiated Harris' allegations that petitioner made an inappropriate racial slur.

An attorney with the EEO office prepared a report summarizing the findings of its investigation and furnished it to the Assistant Commissioner of the Department. In turn, the Assistant Commissioner submitted her own report to the Department's Commissioner, detailing the determination of the EEO office and recommending that petitioner receive additional EEO training and that he "sign and acknowledge an Advisory Memorandum regarding the rights and responsibilities" of an employee with the Department. Upon review, the Commissioner approved this recommendation.

Accordingly, by letter dated June 5, 2008, the Assistant Commissioner informed petitioner that the EEO office had determined he "exercised unprofessional conduct and made an offensive racial statement" in connection with the complaint filed against him by Harris. The letter instructed him to read and sign the attached Advisory Memorandum and advised him that

---

* Neither the police nor BIT ultimately took any action against petitioner.

he would receive further EEO training at a future date. The Commissioner characterized the letter to petitioner "as a formal Notice of Disposition of the filed Complaint." The letter was subsequently placed in petitioner's permanent EEO file.

Petitioner objected to the placement of this letter in his EEO file contending that the Department denied him due process in that he had no opportunity to confront and cross-examine witnesses or present witnesses on his own behalf. On September 29, 2008, petitioner commenced this CPLR article 78 proceeding, requesting Supreme Court, among other things, to annul the Department's determination that petitioner made racially offensive remarks to Harris. Petitioner further sought the court to direct the Department to provide petitioner with a hearing on the matter.

By order entered on December 10, 2009, Supreme Court annulled the Department's determination and expunged the Assistant Commissioner's letter from petitioner's EEO file. The court concluded that "the letter [was] a disciplinary reprimand and not a critical evaluation" and, therefore, petitioner had the right to a formal hearing and other due process safeguards. Supreme Court further observed that it could not order a hearing because, as the parties conceded, the applicable statute of limitations for conducting a hearing had expired. The Appellate Division affirmed the order of Supreme Court, similarly concluding that the Department did not "comport[ ] with the requirements of due process" (*Matter of D'Angelo v Scopetta*, 81 AD3d 820, 821 [2d Dept 2011]). We granted the Department leave to appeal (17 NY3d 710 [2011]) and now affirm.

Our analysis begins with section 15-113 of the Administrative Code, which relates to discipline and removal procedures for members of the Department (*see generally Matter of Von Essen v New York City Civ. Serv. Commn.*, 4 NY3d 220, 223-224 [2005]). The statute provides that

> "[t]he commissioner shall have power, in his or her discretion on conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders or incapacity . . . or immoral conduct, or conduct unbecoming an officer or member, or other breach of discipline, to punish the offending party by reprimand . . . or dismissal from the force" (Administrative Code § 15-113).

In *Matter of Tiernan v Walsh* (294 NY 299 [1945]), we examined this statute, then section 487a-12.0 of the Administrative Code, and concluded that "the phrase 'on conviction' . . . imports a trial or hearing as a necessary incident to a disciplinary proceeding" (*id.* at 304).

The Department does not dispute that Administrative Code § 15-113 requires a hearing before its members are subject to punishment by reprimand. Rather, the Department argues that a hearing was not necessary in this case because the letter it placed in petitioner's permanent EEO file was not a formal reprimand but merely a critical evaluation not subject to the same due process protections. We disagree.

In that regard, our decision in *Holt v Board of Educ. of Webutuck Cent. School Dist.* (52 NY2d 625 [1981]) is instructive. There, two tenured teachers commenced separate proceedings against their respective school districts after school administrators placed letters in their permanent files criticizing their performance without conducting a hearing pursuant to section 3020-a of the Education Law. In the first case, school administrators issued the teacher two letters, one admonishing him for failing to maintain an orderly classroom after he had been directed to do so and the other scolding him for interrupting the class of another (*see id.* at 629-630). The letters described the teacher as incompetent, insubordinate and unbecoming (*see id.* at 629-630). In the second case, a school administrator sent the teacher one letter warning him that his regular absences from his assigned duties violated school policy.

We concluded these letters did not trigger the due process protections of Education Law § 3020-a because they were simply "critical evaluations" and not "formal reprimand[s]" (*id.* at 633). Although we acknowledged that the letters at issue were "sharply critical," we observed that the fundamental purpose of these communications was not to punish but to identify "a relatively minor breach of school policy and to encourage compliance with that policy in the future" (*id.*). We further noted that individual school administrators issued these letters and that neither teacher was subject to an investigation conducted by the board of education. Thus, we opined:

> "[w]hile the inclusion of such letters in the teacher's permanent file may have some effect on his future advancement or potential employability elsewhere, it is by no means as damaging as a formal reprimand

issued by the board of education as the result of a determination of misconduct made by an impartial hearing panel. Each letter represents one administrator's view, not a formal finding of misconduct" (*id.*).

The facts in this case are readily distinguishable from the facts in *Holt*. To begin, petitioner here did not merely receive a letter from an immediate supervisor criticizing his performance. Rather, petitioner was the subject of a formal investigation conducted by the Department's EEO office in response to the complaint that he directed racially offensive language at Harris. That investigation, which took place over a two-year period, involved the interviewing of several eyewitnesses including the complainant and petitioner. After completing these interviews, the EEO office determined that the evidence they collected substantiated Harris' complaint and, as a result, they supplied a detailed report to the Assistant Commissioner. In turn, the Assistant Commissioner reviewed the EEO office's findings and then conferred with the Commissioner himself who ultimately approved the EEO office's determination. Thus, the letter in this case stands in contrast to the letters in *Holt*, which only reflect the views of a particular supervisor (*see* 52 NY2d at 633).

Second, there is no way to characterize the determination that petitioner directed a racial epithet at Harris as a "minor breach" of the Department's EEO policy. The letter clearly reflects the serious nature of the Department's investigation of the complaint. The Assistant Commissioner wrote the letter to petitioner and noted that such document "serve[d] as a formal Notice of Disposition of the filed Complaint." The letter, in no uncertain terms, informs petitioner that a thorough investigation revealed that he "exercised unprofessional conduct" and "made an offensive racial statement." The letter further advises petitioner that, as a consequence of his misconduct, he was required to review and sign an EEO Advisory Memorandum and participate in further EEO training. On that note, we agree with petitioner that the requirement to participate in additional EEO training is a form of discipline and not, as the Department contends, mere encouragement to comply with EEO policy (*cf. Holt*, 52 NY2d at 633). Moreover, as the Department conceded at oral arguments, the EEO's finding that petitioner was in breach of its racial discrimination policy is serious misconduct that could negatively impact his eligibility for future promotion.

In sum, we conclude that the letter issued to petitioner constitutes a formal reprimand under Administrative Code

§ 15-113. Because the Department denied petitioner his right to due process by placing the letter in his file without conducting a hearing, the letter was properly expunged from petitioner's permanent EEO file.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

SMITH, J. (dissenting). I dissent because I do not think the Assistant Commissioner's letter to petitioner is a "reprimand" as we interpreted that term in *Holt v Board of Educ. of Webutuck Cent. School Dist.* (52 NY2d 625 [1981]).

Laws governing the discipline of civil servants, including Administrative Code of the City of New York § 15-113, often require a trial or hearing, with due process protections, before an employee can be given a "reprimand." If that term were given a broad interpretation, it could make the lives of public employers almost impossible: They would have to go through a proceeding before a neutral factfinder, with witnesses and cross-examination, every time they wanted to say a harsh word to an employee.

In recognition of this problem, we interpreted "reprimand" narrowly in *Holt*, to include only a "formal reprimand" (52 NY2d at 633). One of the documents before us in *Holt* was a letter from a district principal to a schoolteacher, placed in the teacher's personnel file, that said the teacher had been "insubordinate" and behaved in a way "unbecoming of a teacher" (*id.* at 630). We held that this letter, and a somewhat similar letter involved in a companion case, were not reprimands within the meaning of the statute but only "critical evaluations" (*id.* at 633). The purpose of the letters, we said, was "to warn, and hopefully to instruct—not to punish" (*id.*). We added:

> "While the inclusion of such letters in the teacher's permanent file may have some effect on his future advancement or potential employability elsewhere, it is by no means as damaging as a formal reprimand issued by the board of education as the result of a determination of misconduct made by an impartial hearing panel. Each letter represents one administrator's view, not a formal finding of misconduct" (*id.*).

I see no essential difference between the letter in this case and the letter in *Holt*. The letter here, which said that petitioner "exercised unprofessional conduct and made an offensive racial

statement" does not seem materially harsher in its language than the letter at issue in *Holt*. It is true, as the majority emphasizes (majority op at 669), that the letter in this case was preceded by a more elaborate investigation than the *Holt* letter. On the other hand, the letter here made its "purpose to warn, and . . . instruct—not to punish" clearer than the *Holt* letter did: The letter in this case enclosed an "EEO Advisory Memorandum" for petitioner to review and informed him that he would be receiving "EEO Training."

As I interpret *Holt*, it allows public employers broad discretion to convene or not to convene "an impartial hearing panel" to make a "determination of misconduct" justifying the issuance of a "formal reprimand." The formality of that procedure in itself, as *Holt* explained, significantly increases the damage done by the reprimand to an employee's career. Employers should not be deterred from choosing, where they think it wise, a less formal and less damaging means of communicating their displeasure with an employee's conduct.

The Appellate Division decision in *Matter of Civil Serv. Empls. Assn. v Southold Union Free School Dist.* (204 AD2d 445 [2d Dept 1994]), assuming that it is correctly decided, is distinguishable. The critical document in that case was explicitly "designated a 'formal reprimand' " (*id.* at 445). *Southold* thus stands for the proposition when an employer seeks the impact that the words "formal reprimand" impart, it must invoke the formal procedures required by civil service legislation.

I would accordingly reverse the Appellate Division's order and dismiss the petition.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and JONES concur with Judge CIPARICK; Judge SMITH dissents and votes to reverse in a separate opinion.

Order affirmed, with costs.